# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SUSAN M. AMOS,**

       **Plaintiff,**

**v.**                                     **Case No:  6:13-cv-1139-Orl-31GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

       **Defendant.**

_____

# REPORT AND RECOMMENDATION

    Susan M. Amos (the "Claimant"), appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits and supplemental security income benefits.  Doc. No. 1.[1]  Claimant argues that the Administrative Law Judge (the "ALJ") erred by: 1) failing to state the weight assigned to medical opinions; 2) failing to account for her moderate limitations in maintaining concentration, persistence and pace in his residual functional capacity ("RFC") determination and hypothetical question the vocational expert ("VE"); 3) finding that she could perform her past relevant work as a fast food worker; and 4) failing to consider the side effects of her medications.  Doc. No. 12 at 5-18.  For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** and **REMAND** the Commissioner's final decision for further proceedings.

## I.    THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.

    Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is

_____

[1] Claimant alleged disability beginning on January 1, 2010.  R. 12.

disabled.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity.  At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments.  At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience.  If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work.  At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted).  The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## II.    **STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The

District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (the court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

III.    **ANALYSIS.**

   **A.  Weighing Medical Opinions.**

   At the center of this dispute is whether the ALJ erred by not assigning weight to the medical evidence and opinions of record. Doc. Nos. 12 at 5-8; 13 at 8-14. Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the sequential evaluation process for determining disability. The Eleventh Circuit has clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the

merits of the claim is rational and supported by substantial evidence.'"  *Winschel*, 631 F.3d at 1179

(quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

### 1.  Failure to Assign Weight.

Claimant argues that the ALJ erred by not assigning weight to the medical opinions of

record.  Doc. No. 12 at 6-9.  The Commissioner tacitly concedes that the ALJ did not weigh the

medical opinions of record, but argues that the ALJ implicitly gave significant weight to the

medical opinions of record.  Doc. No. 13 at 9-14.

At step four of the sequential evaluation process, the ALJ determined that Claimant has the

following RFC:

> [A] full range of work at all exertional levels but with the following
> nonexertional limitations: the claimant can never climb ropes,
> ladders, or scaffolds.  Further, the claimant should avoid moderate
> exposure to hazards, such as machinery and heights.  The claimant
> can perform simple, routine, repetitive tasks involving up to three
> step commands.  Furthermore, the claimant can adjust to occasional
> changes in the work setting and she can occasionally use her own
> judgment or decision-making.  In addition, the claimant can
> occasionally interact with the general public and co-workers.

R. 16.  In reaching this RFC determination, the ALJ considered the medical opinions of record,

but did not expressly assign weight to the opinions.  *See* R. 12-20.

Generally, failure to state the weight accorded to a medical opinion results in reversible

error.  *Winschel*, 631 F.3d at 1179.  However, such an error can be harmless where the opinion at

issue does not contradict the ALJ's RFC determination.  *Wright v. Barnhart*, 153 F. App'x 678,

684 (11th Cir. 2005).[2]  Here, while the ALJ did not expressly state the weight assigned to each

medical opinion, the ALJ did state that he "incorporate[d] the recommended limitations of the

---

[2] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36–2.

consultative and review physicians" in his RFC determination.  R. 19.[3]  The only functional limitations contained in the medical opinions of record pertain to Claimant's ability to climb ropes, ladders, or scaffolds, and be exposed to hazards, such as machinery and heights.  *See* R. 364-71.[4] The remaining limitations contained in the ALJ's RFC determination were not contained in any medical opinions of record.  *See* R. 276-429.  Since the ALJ incorporated these limitations into his RFC determination, his failure to state the weight assigned to the medical opinions of record results in harmless error.  *Wright*, 153 F. App'x at 684.[5]  Accordingly, it is **RECOMMENDED** that the Court reject this argument.

### 2.  Global Assessment of Functioning Scores.

Claimant argues that the ALJ erred by not assigning weight to Claimant's Global Assessment of Functioning ("GAF") scores.  Doc. No. 12 at 7.  The Commissioner tacitly concedes that the ALJ did not address or weigh any of the GAF scores in the record, but argues that his

---

[3] The record does not contain any opinions from treating physicians opining about Claimant's functional limitations. R. 276-429.

[4] The record also contains a physical RFC assessment from a single decision maker with additional functional limitations.  R. 332-39.  However, the ALJ is not required to weigh the opinion of a single decision maker since it is not a medical opinion.  *See, e.g.*, *Brown v. Astrue*, Case No. 3:11-cv-187-J-JRK, 2012 WL 920973, *4 (M.D. Fla. Mar. 19, 2012) (finding that a RFC assessment completed by a single decision maker with no apparent medical credentials is not an opinion of an acceptable medical source and is not entitled to any weight).

[5] Harmless error has been described as an error that does not affect a party's substantial rights.  *Riddles v. Astrue*, 2010 WL 5071320, at *5 (N.D. Fla. Nov. 3, 2010).  It has also been described as an error that does not affect the end result. *Sample v. Astrue*, Case No. 2:09-cv-89-FtM-26SPC, 2010 WL 1751947, at *1 (M.D. Fla. Apr. 29, 2010).  Stated differently, the "harmless error doctrine essentially dictates that if remand for the correction of an error would not change the outcome . . . such error is deemed harmless."  *Torres v. Astrue*, 2012 WL 621707, at *2 (M.D. Ga. Feb. 2, 2012); *see Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").  To the extent Claimant argues the ALJ erred by failing to assign weight to Dr. Sanchez's diagnosis of agoraphobia and Dr. Mucciolo's diagnosis of muscle strain any such error is harmless since the record contains no medical opinions assessing Claimant with functional limitations due to her agoraphobia or muscle strain. *See* R. 276-429; *see, e.g.*, *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."); *Rodriguez v. Colvin*, Case No. 8:12-cv-1592-T-33EAJ, 2013 WL 4495173, at *5-6 (M.D. Fla. Aug. 20, 2013) (finding that the ALJ did not "reversibly err" by failing to assign weight to the diagnoses of several physicians since the record was bereft of medical opinions that the diagnosed impairments caused functional limitations).

failure to do so is not reversible error since the Commissioner has "declined to endorse GAF scores for use in the disability programs[,]" a majority of the GAF scores indicating severe impairments were rendered well before the alleged disability onset date, and none of the GAF scores at issue were translated into functional limitations.  Doc. No. 13 at 11-12.

The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (citing 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000)).  Likewise, courts in this District recognize that GAF scores are of "questionable value in determining an individual's mental functional capacity." *E.g.*, *Wilson v. Astrue*, 653 F. Supp. 2d 1282, 1293 (M.D. Fla. 2009) (quoting *Gasaway v. Astrue*, Case No. 8:06-cv-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008)).[6]  The Eleventh Circuit, though, has, on occasion, reversed cases for further consideration of a claimant's GAF score.  *McCloud v. Barnhart*, 166 F. App'x 410 (11th Cir. 2006); *Davis v. Astrue*, 287 F. App'x 748 (11th Cir. 2008).  However, *McCloud* and *Davis* involved a misinterpretation of GAF scores at the administrative level.  *Id.* at 418; *Id.* at 757-59.  In the absence of such a misinterpretation, though, courts in this District have generally declined to find reversible error where an ALJ does not expressly discuss a claimant's GAF scores.  *See, e.g.*, *Bailey v. Astrue*, Case No. 3:09-cv-383-J-JRK, 2010 WL 3220302, at *8-9 (M.D. Fla. Aug. 13, 2010) (finding the ALJ's failure to mention Plaintiff's GAF scores did not require remand); *Smith v. Comm'r of Soc. Sec.*, Case No. 6:10-cv-1478-Orl-31KRS, 2011 WL 6217110, at *6-7 (M.D.

---

[6] The Court notes that the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders does not utilize the GAF scale, noting that it was recommended "the GAF be dropped . . . for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

Fla. Nov. 1, 2011) *report and recommendation adopted*, 2011 WL 6217124 (M.D. Fla. Dec. 14, 2011), *aff'd*, 486 F. App'x 874 (11th Cir. 2012).

Although the medical record contains numerous GAF scores ranging from 35 through 80 (*See* R. 276-429), the ALJ does not refer to or assign weight to any of the scores in his decision. *See* R. 12-20. Claimant has selectively cited to the following six (6) GAF scores rendered by nurse practitioners in support of her argument: a score of 35 on August 24, 2007; a score of 50 on August 29, 2007; a score of 45 on September 20, 2007; and a score of 55 on November 3 and 14, 2010, and September 23, 2011. Doc. No. 12 at 7 (citing R. 289-90, 294, 376, 378, 395).[7] Notably, the first three (3) GAF scores, which represent Claimant's lowest GAF scores, were rendered well before Claimant's alleged disability onset date of January 1, 2010. As for Claimant's sporadic GAF scores during the relevant period, which range from 55 to 80 (R. 317, 347, 349, 376, 378, 395), there is nothing to suggest that these GAF scores were indicative of functional limitations not otherwise accounted for by the ALJ. Furthermore, the ALJ discussed the medical and opinion evidence of record concerning Claimant's mental impairment, and there is no indication that he overlooked or misconstrued any of Claimant's GAF scores. R. 16-19. Therefore, as there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, *Dyer*

---

[7] GAF scores are used to report an individual's overall level of functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision, 2000). A GAF score of 31-40 indicates: "**Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; . . .)." *Id.* at 34 (emphasis in original). A GAF score of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." *Id.* (emphasis in original). A GAF score of 51-60 indicates: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)." *Id.* (emphasis in original). A GAF score of 61-70 indicates: "**Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning . . ., but generally functioning pretty well, has some meaningful interpersonal relationships**." *Id.* (emphasis in original). A GAF score of 71-80 indicates: "**If symptoms are present, they are transient and expectable reactions to psycho-social stressors** (e.g., difficulty concentrating after family argument); **no more than slight impairment in social occupational or school functioning . . ..**" *Id.* (emphasis in original).

*v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), and substantial evidence otherwise supports the ALJ's RFC determination, any error in failing to evaluate the GAF scores of 55 is harmless. *See Riddles*, 2010 WL 5071320, at *5.  Accordingly, it is **RECOMMENDED** that the Court reject this argument.

### B.  Concentration, Persistence and Pace.

At step three of the sequential evaluation process, the ALJ found Claimant has moderate limitations in maintaining concentration, persistence and pace.  R. 15.  Claimant argues that the ALJ's RFC determination does not adequately reflect her limitations in maintaining concentration, persistence and pace, and therefore the Commissioner's decision is not supported by substantial evidence.  Doc. No. 12 at 8-15 (citing *Winschel*, 631 F.3d 1176; *Hommell v. Comm'r Soc. Sec.*, Case No. 6:12-cv-102-Orl-31GJK, 2013 WL 787181 (M.D. Fla. Mar. 4, 2013)).[8]  Conversely, the Commissioner argues that the ALJ's RFC determination adequately accounts for Claimant's limitations in maintaining concentration, persistence and pace, because the medical evidence and Claimant's testimony demonstrates that she can perform "simple, routine, repetitive tasks involving up to three step commands" despite her limitations in maintaining concentration, persistence and pace.  Doc. No. 13 at 15-16.

At step four of the sequential evaluation process, the ALJ must determine a claimant's RFC and ability to do past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do

---

[8] Claimant also argues that the Commissioner's decision is not supported by substantial evidence because the ALJ's hypothetical to the VE does not adequately reflect her limitations in maintaining concentration, persistence and pace. Doc. No. 12 at 8-15.  For this argument to succeed, the ALJ must have relied on the VE's testimony in determining that Claimant could perform her past relevant work.  Claimant, however, unwittingly undermines this argument by later arguing that the ALJ did not rely on the VE's testimony in determining that she can perform her past relevant work.  *Compare* Doc. No. 12 at 10-11 *with Id*. at 16.  As discussed below, the undersigned finds that the ALJ did not rely on the VE's testimony in determining that Claimant can perform her past relevant work.  *See infra* at 11-14.  Therefore, Claimant's argument that the ALJ's hypothetical to the VE does not adequately reflect her limitations in maintaining concentration, persistence and pace must fail.

work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).  In evaluating a claimant's RFC, the ALJ considers the claimant's ability to "meet the physical, mental, sensory, and other requirements of work[.]"  20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4).  The ALJ must consider all of a claimant's medically determinable impairments, even those not designated as severe.  *Id*. §§ 404.1545(a)(2), 416.945(a)(2).  If a claimant can still do the kind of work he or she has done in the past, then the regulations require that the claimant be found not disabled.  20 C.F.R. § 404.1520(f).  The claimant bears the burden of showing that he or she can no longer perform his or her past relevant work.  *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986).  The responsibility for determining a claimant's RFC rests solely with the ALJ.  20 C.F.R. § 404.1513(b)(6) (the lack of a medical source statement stating what the claimant can still do despite his or her impairments will not make a medical report incomplete); 20 C.F.R. § 404.1527(e)(2).[9]

In *Winschel*, the Eleventh Circuit held that if a claimant is found to suffer moderate limitations in maintaining concentration, persistence and pace, the ALJ must either "indicate that medical evidence suggested [that claimant's] ability to work was unaffected by [those] limitation[s]," or include those limitations, either explicitly or implicitly, in the hypothetical question(s) posed to the VE.  *Winschel*, 631 F.3d at 1181.  Since *Winschel*, the Eleventh Circuit has recognized that a hypothetical question, and consequently the ALJ's RFC determination, could sufficiently account for moderate limitations in concentration, persistence and pace by including a restriction to simple or routine tasks, if the medical evidence demonstrates that the claimant has

---

[9] "We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s).  Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . ., your [RFC] . . ., or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner."  20 C.F.R. § 404.1527(d)(2).

the ability to perform those tasks despite such limitations.  *See, e.g.*, *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 907 (11th Cir. 2013); *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950-1 (11th Cir. 2013); *Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013); *Scott v. Comm'r of Soc. Sec.*, 495 F. App'x 27, 29 (11th Cir. 2012); *Syed v. Comm'r of Soc. Sec.*, 441 F. App'x 632, 634-5 (11th Cir. 2011); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 871-2 (11th Cir. 2011).

In considering Claimant's limitations in maintaining concentration, persistence and pace, the ALJ explained:

> On some occasions, the claimant cannot seem to get anything done. Further, the claimant has difficulties following spoken instructions and she does not know how long she can pay attention.  However, the claimant has some good days where she can follow written instructions.

R. 15.  At step four of the sequential evaluation process, the ALJ stated the following:

> As for the medical opinion evidence of record, the medical record contains numerous opinions from treating, examining, and non-treating physicians regarding the severity of the claimant's impairments; however, the common denominator is that none of these physicians has offered an opinion that the claimant is restricted from the performance of work.
>
> The claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of discrepancies between the claimant's assertions, information contained in the documentary reports, and the reports of the treating and examining practitioners.  Although the [ALJ] does not find the claimant at all times symptom free, the evidence does not support the degree of limitation the claimant alleges at any time since the claimant's alleged onset date.  The [ALJ] generously considered the claimant's subjective complaints in the [RFC] assessment, which takes full account of the objective findings, incorporates the recommended limitations of the consultative and review physicians, and accords the claimant every reasonable benefit of the doubt.

R. 19.  Claimant does not challenge the ALJ's credibility determination.  *See* Doc. No. 12.

The ALJ properly accounted for Claimant's moderate limitations in maintaining concentration, persistence and pace in his RFC determination.  Though Claimant argues that the ALJ should have explicitly included such limitations in his RFC determination (Doc. No. 12 at 11), there is no requirement that the ALJ must intone the magic words "concentration, persistence and pace" if the ALJ finds that the claimant has limitations in that broad functional area.  *See Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 916 (11th Cir. 2013).   The ALJ may implicitly account for those limitations in other ways when crafting his or her RFC determination.  *Id*. (citing *Winschel*, 631 F.3d at 1181).  That is what occurred here.  Despite the lack of medical evidence indicating that Claimant has functional limitations in maintaining concentration, persistence and pace (*see* R. 276-429), the ALJ, in light of his finding that she does have such limitations, implicitly accounted for those limitations by limiting her to "simple, routine, repetitive tasks involving up to three step commands."  R. 16.[10]  There is nothing in the record except Claimant's own testimony, which the ALJ addressed in his credibility finding, suggesting that Claimant's limitations in maintaining concentration, persistence and pace are greater than those found by the ALJ.  Accordingly, it is **RECOMMENDED** that the Court reject this argument.

### C.  Past Relevant Work.

Claimant argues that the ALJ erred in determining that she can perform her past relevant work as a fast food worker as it is actually performed in the national economy, because the VE testified that she could not perform such work as it is described in the Dictionary of Occupational Titles ("DOT").   Doc. No. 12 at 15-16.[11]   The Commissioner interprets the ALJ's ruling

---

[10] The record does contain a psychological evaluation completed by a one-time examining clinical psychologist and a psychiatric review technique ("PRT").  R. 315-31.  However, these records do not assess any functional limitations related to Claimant's limitations in maintaining concentration, persistence and pace.  *Id*.

[11] Claimant also argues that the error is not harmless because the ALJ failed to develop the record as to how much interaction a fast food worker has with others.  *Id*. at 16-17.

differently, maintaining that the ALJ found that Claimant can perform her past relevant work as a fast food worker as she actually performed it, which the Commissioner argues is supported by substantial evidence in the form of the VE's testimony.  Doc. No. 13 at 16-17.  Thus, the parties disagree about whether the ALJ ruled Claimant can perform her past relevant work as she actually performed it or as the work is performed in the national economy, i.e., per the DOT.

The claimant bears the burden of showing that he or she cannot return to his or her past relevant work.  *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990).  The claimant also has the burden to provide evidence about his or her work experience.  20 C.F.R. § 404.1512(c)(3).  To support a conclusion that the claimant is able to return to his or her past relevant work, the ALJ must consider all the duties of that work and evaluate the claimant's ability to perform them in spite of his or her impairments.  *Lucas*, 918 F.2d at 1574 n.3.  Generally, if the ALJ concludes that the claimant can perform his or her past relevant work, VE testimony is not necessary to determine whether a claimant can perform that work.  *Id*. at 1573 n.2.  A claimant is not disabled if he or she is able to perform his or her past work either as it was actually performed or as it is generally performed in the national economy.  20 C.F.R. § 404.1560(b).

At the hearing, Claimant testified that she worked at McDonald's cleaning dishes and the lobby.  R. 34.  Following Claimant's testimony, the ALJ posed the following hypothetical to the VE:

> [A]ssume a hypothetical individual of the claimant's age, education, and vocational background, and no exertional limitations but the following non-exertionals.  Never climb ropes, ladders or scaffolds, and avoid moderate exposure to hazards such as machinery and heights.  This person would be limited to simple routine repetitive tasks with up to three step commands with occasional changes in the work setting, occasional judgment, and occasional decisionmaking.  Finally, this person would be limited to occasional interaction with the general public and co-workers.

R. 48.  The VE testified that Claimant could perform her past relevant work as a fast food worker "[a]s she described it."  *Id*.  Thereafter, the ALJ asked the VE whether Claimant could perform such work as it is described in the DOT, to which the VE responded in the negative.  R. 48-9.

In his decision, the ALJ stated the following with respect to Claimant's ability to perform her past relevant work:

> The record establishes that the claimant worked as a fast food worker from 2007 to 2010.  In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the [ALJ] finds that the claimant is able to perform the job as it is actually performed.  The [DOT] provides that work as a fast food worker is performed at the light exertional level.  As discussed above, the claimant does not have any exertional limitations.  Furthermore, although the claimant alleges bipolar disorder and epilepsy affects her ability to work, as noted above, the record is void of any evidence to show the claimant's impairment prevents her from working.  Therefore, the claimant's impairment does not prevent the performance of past relevant work (SSRs 82-61 and 82-62).

R. 20 (emphasis added).  Thus, the ALJ specifically references the DOT, but nowhere does he discuss the VE's testimony, or to what extent he finds the VE's testimony credible or consistent with the DOT.  *See* R. 12-20.[12]

The ALJ's determination concerning Claimant's ability to perform her past relevant work is not a model of clarity, as exhibited by the parties' differing interpretations of the following statement: "[T]he [ALJ] finds that the claimant is able to perform [work as a fast food worker] as it is actually performed."  Despite the apparent ambiguity, a fair reading of the ALJ's determination, given the ALJ's focus on the DOT and lack of reference to the VE's testimony, indicates that the ALJ found that Claimant could perform her past relevant work as it described in the DOT (i.e., as it is generally performed in the national economy).  R. 20.  This determination,

---

[12] The ALJ did not proceed to step five of the sequential evaluation process.  R. 19-20.

however, is not supported by substantial evidence given the VE's testimony that Claimant could not perform such work.  R. 48-9.  Further, this error is not rendered harmless by virtue of the VE's testimony that Claimant can perform work a fast food worker as she actually performed it, as such a conclusion, given the ALJ's lack of reference to the VE's testimony or reliance thereon, necessarily requires a finding by the Court that the ALJ considered and relied upon the VE's testimony.  Since the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, *Phillips*, 357 F.3d at 1240 n.8, the Court must conclude that the ALJ's error at step four is not harmless.  Accordingly, it is **RECOMMENDED** that the Court accept this argument and remand the case for further proceedings.

### D.  Medication Side Effects.

Claimant argues that the ALJ erred by not considering the side effects of her medications, and the impact thereof on her ability to work.  Doc. No. 12 at 17-18.  The Commissioner argues that Claimant failed to provide evidence demonstrating that the alleged side effects impacted her ability to work, and that the ALJ implicitly discounted Plaintiff's allegations concerning the severity and impact of the alleged side effects by finding her testimony not credible.  Doc. No. 13 at 18-19.

In determining whether a claimant's impairment(s) limit his or her ability to work, the ALJ considers, among other things, the claimant's subjective symptoms, which include, the "type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms[.]"  20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).  The ALJ, however, need not inquire into the side effects of a claimant's medications where the claimant was represented at the hearing, and did not assert that side effects from his or her medications contributed to his or her disability.  *Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985); *cf. Cowart*, 662 F.2d at

735-37 (where an unrepresented claimant's hearing testimony raises a question about the side effects of medications, the ALJ has a special duty to elicit additional testimony or otherwise make a finding about such side effects).[13]

The record contains scant evidence that Claimant suffers side effects from her medications. On August 4, 2010, Claimant reported, and the ALJ noted, that Trileptal caused her to feel "a bit sleepy." R. 18, 361.[14] At the hearing, Claimant, who was represented, testified that her medications make her feel "slow," impact her ability to function (though she does not specify how), and that Haloperidol is "very heavy." R. 38-9. Claimant, however, cites no medical or opinion evidence indicating that her reported side effects alone, or in combination with her other impairments, are severe enough to be disabling (*See* Doc. No. 12 at 17-18), nor did she testify to the same effect (*See* R. 29-51). Despite this fact, Claimant suggests that the ALJ should have determined how her medications impacted her ability to work. Doc. No. 12 at 18. Claimant, however, bears the burden of introducing evidence supporting a claim that her symptoms, including any medication side effects, render her disabled. *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010) (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)). Claimant has not met that burden.[15]

---

[13] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[14] This is the only instance Claimant reported a side effect associated with Trileptal. *See* R. 276-429.

[15] In support of her argument, Claimant points to side effects reportedly caused by Risperdal and Abilify. Doc. No. 12 at 18. While medical records reflect Claimant reported that Risperdal caused "bad reaction[s]" and "angry outburst[s]" (R. 278-9), and Abilify caused seizures (R. 362), the record also reveals that Claimant was taken off these medications. Claimant was taken off of Risperdal on October 7, 2009 (R. 278), and subsequently taken off of Abilify (R. 361-63; 369). The record also reflects that on November 3, 2010, Claimant requested that she be put back on Abilify, because mentally she felt better on it and her doctor indicated that she could restart Abilify if her seizures were stable. R. 377. No medical records dated after November 3, 2010, reveal that Claimant restarted Abilify. *See* R. 380, 382, 399, 402, 404, 407, 423. Further, Claimant did not testify at the hearing whether she was on Abilify, but did testify that she has not had seizures "now that I'm on the medication . . .." R. 39.

Further, the ALJ found that Claimant's subjective complaints "concerning the intensity, persistence and limiting effects of [her] symptoms," which encompass Claimant's testimony about her side effects, "are not credible to the extent they are inconsistent with the above [RFC] assessment." R. 17.   In support of this finding, the ALJ indicated that Claimant's subjective complaints are inconsistent with the medical evidence of record and Claimant's testimony concerning her daily activities. R. 18-19.  As previously mentioned, Claimant does not challenge the ALJ's credibility determination (*See* Doc. No. 12), and the undersigned finds that the ALJ articulated good cause for discrediting Claimant's testimony and that his reasons for doing so are supported by substantial evidence.  *See Foote*, 67 F.3d at 1561-62 (reviewing court will not disturb credibility finding with sufficient evidentiary support).  Given the absence of evidence indicating that Claimant's reported side effects impact her ability to work and the ALJ's credibility determination, it is **RECOMMENDED** that the Court reject this argument.

## IV.   CONCLUSION.

Accordingly, it is **RECOMMENDED** that the Court:

1.    **REVERSE** and **REMAND** the final decision of the Commissioner for further proceedings; and

2.    Direct the Clerk to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 24, 2014.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Presiding District Judge
Counsel of Record

The Honorable Aaron M. Morgan
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Bldg., Suite 400
8880 Freedom Xing Trl.
Jacksonville, FL 32256-1224